**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

|  |  |  |
|---|---|---|
| LEASEPOINT FUNDING GROUP, LLC, | ) | Case No.: _____ |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| OSTEOPOROSIS & RHEUMATOLOGY | ) |  |
| CENTER OF TAMPA BAY, LLC, | ) |  |
| JEFFREY MILLER, MD, PA, and | ) |  |
| JEFFREY MILLER, individually, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**COMPLAINT**

NOW COMES Plaintiff, LEASEPOINT FUNDING GROUP, LLC, by and through undersigned counsel, and for its Complaint against Defendants OSTEOPOROSIS & RHEUMATOLOGY CENTER OF TAMPA BAY, LLC, JEFFREY MILLER, MD, PA, and JEFFREY MILLER, individually, (collectively, the "Defendants"), states as follows:

**PARTIES**

1.      LeasePoint Funding Group, LLC ("LeasePoint") is a Texas limited liability company with its principal place of business located at 8601 Ranch Road 2222 Bldg. 1, Suite 102, Austin, Texas 78730.

2.      LeasePoint's members are Markim Ventures, LLC and BDT Finance, LLC. Markim Ventures, LLC is a Texas limited liability company with its principal place of business located at 6500 Lost Cove, Austin, Texas 78746. Markim Ventures, LLC's sole member is Jeff Markim, who is a citizen of the State of Texas. BDT Finance, LLC is a Texas limited liability

1

company with its principal place of business located at 13013 Travis View Loop, Austin, Texas 78732. BDT Finance, LLC's sole member is Danny Totah, who is a citizen of the State of Texas.

3.      Osteoporosis & Rheumatology Center of Tampa Bay LLC ("O&R Center") is a Florida limited liability company with its principal place of business located at 3218 W. Azeele St., Tampa, Florida 33609. Upon information and belief, O&R Center's sole member is Miller.

4.      Jeffrey Miller MD, PA ("Miller Medical Practice") is a Florida corporation with its principal place of business located at 3218 W. Azeele St., Tampa, Florida 33609.

5.      Jeffrey Miller ("Miller") is a citizen of the State of Florida who resides at 4916 W. Bay Way Dr., Tampa, Florida 33629.

## JURISDICTION AND VENUE

6.      Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332(a)(1), insomuch as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2), because a substantial part of the events or omissions giving rise to LeasePoint's claims occurred in this judicial district, and because the Defendants reside in this judicial district.

## BACKGROUND

I.      **Equipment Finance Agreement No. xxxx194**

8.      On or about February 21, 2020, LeasePoint, as creditor, and O&R Center, as debtor, entered into Equipment Finance Agreement No. xxxx194 (the "First Agreement"), for the financing of one (1) CynoSure TempSure, Serial No. 675-7027-002 (the "First Equipment"). A true and correct copy of the First Agreement is attached hereto as Exhibit 1.

9.      To induce LeasePoint to enter into the First Agreement with O&R Center, Miller executed a guaranty in which he personally guaranteed the full and prompt payment and performance of all of O&R Center's obligations under the First Agreement (the "First Miller Guaranty"). A true and correct copy of the First Miller Guaranty is located on the face of the First Agreement, attached hereto and incorporated as Exhibit 1.

10.     To induce LeasePoint to enter into the First Agreement with O&R Center, Miller Medical Practice executed a corporate guaranty in which Miller Medical Practice guaranteed the full and prompt payment and performance of all of O&R Center's obligations under the First Agreement (the "First Corporate Guaranty"). A true and correct copy of the First Corporate Guaranty is attached hereto as Exhibit 2.

11.     Under the First Agreement, O&R Center granted LeasePoint a security interest in the First Equipment, including all proceeds. See Exhibit 1, Grant of Security Interest Paragraph.

12.     LeasePoint perfected its first priority security interest in the First Equipment by filing a UCC Financing Statement with the Florida Secretary of State. A true and correct copy of the UCC Financing Statement reflecting LeasePoint's perfected security interest in the First Equipment is attached hereto as Exhibit 3.

13.     Simultaneously with the execution of the First Agreement, O&R Center executed a Pre-Delivery Certificate (the "First Pre-Delivery Certificate"). A true and correct copy of the First Pre-Delivery Certificate is attached hereto as Exhibit 4.

14.     Pursuant to the First Pre-Delivery Certificate, O&R Center acknowledged that the First Agreement commenced prior to the delivery of the First Equipment. See Exhibit 4.

15.     Pursuant to the First Pre-Delivery Certificate, O&R Center unconditionally agreed that LeasePoint was directed to pay the vendor for the First Equipment prior to delivery or

installation of the First Equipment.  See Exhibit 4.

16.    Pursuant to the First Pre-Delivery Certificate, O&R Center unconditionally agreed that if the later delivered or installed First Equipment was not delivered on time, was not delivered at all, was defective or not working properly, was not what O&R Center expected, or there was any other problem with the First Equipment, O&R Center would be responsible for making all payments under the First Agreement and complying with all other terms and conditions under the First Agreement. See Exhibit 4.

17.    Pursuant to the First Pre-Delivery Certificate, O&R Center further agreed that the First Agreement was not cancellable for any reason. See Exhibit 4.

18.    Pursuant to the First Agreement, O&R Center agreed to make sixty (60) monthly payments of $2,659.05. See Exhibit 1.

19.    O&R Center failed to make timely payments under the First Agreement.

20.    Miller failed to make timely payments under the First Miller Guaranty.

21.    Miller Medical Practice failed to make timely payments under the First Corporate Guaranty.

22.    Failure to make payments when due is an Event of Default under the First Agreement, First Miller Guaranty, and First Corporate Guaranty. See Exhibit 1, Default and Remedies Paragraph; First Miller Guaranty; and First Corporate Guaranty.

23.    As a result of the default under the First Agreement, First Miller Guaranty, and First Corporate Guaranty, LeasePoint is entitled to: possession of the First Equipment; all unpaid payments under the First Agreement; all future payments under the First Agreement, discounted at the rate of three percent (3%) per annum; all unpaid late charges and accrued interest; attorneys'

fees and costs; and all other relief provided under the First Agreement. See Exhibit 1, Default and Remedies Paragraph.

24.     Pursuant to the First Agreement, LeasePoint is entitled to late charges of the lower of ten percent (10%) of such amount or the highest amount allowed by law. See Exhibit 1, Agreement Paragraph and Default and Remedies Paragraph.

25.     Pursuant to the First Agreement, LeasePoint is also entitled to all costs incurred in enforcing its rights under the First Agreement, including attorneys' fees and costs of repossession, repair, storage, and remarketing of the First Equipment. See Exhibit 1, Default and Remedies Paragraph.

26.     LeasePoint demanded payment from the Defendants pursuant to the First Agreement, First Miller Guaranty, and First Corporate Guaranty, but the Defendants have failed and refused to make payment.

27.     LeasePoint demanded return of the First Equipment from O&R Center, but O&R Center failed and refused to return the First Equipment to LeasePoint.

28.     LeasePoint has fully performed all of its obligations under the terms of the First Agreement, First Miller Guaranty, and First Corporate Guaranty.

## II.     Equipment Finance Agreement No. xxxx195

29.     On or about February 21, 2020, LeasePoint, as creditor, and O&R Center, as debtor, entered into Equipment Finance Agreement No. xxxx195 (the "Second Agreement"), for the financing of one (1) CynoSure SculpSure, Serial No. 675-7026-006 (the "Second Equipment"). A true and correct copy of the Second Agreement is attached hereto as Exhibit 5.

30.     To induce LeasePoint to enter into the Second Agreement with O&R Center, Miller executed a guaranty in which he personally guaranteed the full and prompt payment and

performance of all of O&R Center's obligations under the Second Agreement (the "Second Miller Guaranty"). A true and correct copy of the Second Miller Guaranty is located on the face of the Second Agreement, attached hereto and incorporated as Exhibit 5.

31.    To induce LeasePoint to enter into the Second Agreement with O&R Center, Miller Medical Practice executed a corporate guaranty in which Miller Medical Practice guaranteed the full and prompt payment and performance of all of O&R Center's obligations under the Second Agreement (the "Second Corporate Guaranty"). A true and correct copy of the Second Corporate Guaranty is attached hereto as Exhibit 6.

32.    Under the Second Agreement, O&R Center granted LeasePoint a security interest in the Second Equipment, including all proceeds. See Exhibit 5, Grant of Security Interest Paragraph.

33.    LeasePoint perfected its first priority security interest in the Second Equipment by filing a UCC Financing Statement with the Florida Secretary of State. A true and correct copy of the UCC Financing Statement reflecting LeasePoint's perfected security interest in the Second Equipment is attached hereto as Exhibit 7.

34.    Simultaneously with the execution of the Second Agreement, O&R Center executed a Pre-Delivery Certificate (the "Second Pre-Delivery Certificate"). A true and correct copy of the Second Pre-Delivery Certificate is attached hereto as Exhibit 8.

35.    Pursuant to the Second Pre-Delivery Certificate, O&R Center acknowledged that the Second Agreement commenced prior to the delivery of the Second Equipment. See Exhibit 8.

36.    Pursuant to the Second Pre-Delivery Certificate, O&R Center unconditionally agreed that LeasePoint was directed to pay the vendor prior to delivery or installation of the Second Equipment. See Exhibit 8.

37.     Pursuant to the Second Pre-Delivery Certificate, O&R Center unconditionally agreed that if the later delivered or installed Second Equipment was not delivered on time, it was not delivered at all, was defective or not working properly, was not what O&R Center expected, or there was any other problem with such Second Equipment, O&R Center would be responsible for making all payments under the Second Agreement and complying with all other terms and conditions under the Second Agreement. See Exhibit 8.

38.     Pursuant to the Second Pre-Delivery Certificate, O&R Center further agreed that the Second Agreement was not cancellable for any reason. See Exhibit 8.

39.     Pursuant to the Second Agreement, O&R Center agreed to make sixty (60) monthly payments of $3,336.00. See Exhibit 5.

40.     O&R Center failed to make timely payments under the Second Agreement.

41.     Miller failed to make timely payments under the Second Miller Guaranty.

42.     Miller Medical Practice failed to make timely payments under the Second Corporate Guaranty.

43.     Failure to make payments when due is an Event of Default under the Second Agreement, Second Miller Guaranty, and Second Corporate Guaranty. See Exhibit 5, Default and Remedies Paragraph; Second Miller Guaranty; and Second Corporate Guaranty.

44.     As a result of the default under the Second Agreement, Second Miller Guaranty, and Second Corporate Guaranty, LeasePoint is entitled to: possession of the Second Equipment; all unpaid payments under the Second Agreement; all future payments under the Second Agreement, discounted at the rate of three percent (3%) per annum; all unpaid late charges and accrued interest; attorneys' fees and costs; and all other relief provided under the Second Agreement. See Exhibit 5, Default and Remedies Paragraph.

7

45.    Pursuant to the Second Agreement, LeasePoint is entitled to late charges of the lower of ten percent (10%) of such amount or the highest amount allowed by law. See Exhibit 5, Agreement Paragraph and Default and Remedies Paragraph.

46.    Pursuant to the Second Agreement, LeasePoint is also entitled to all costs incurred in enforcing its rights under the Second Agreement, including attorneys' fees and costs of repossession, repair, storage, and remarketing of the Second Equipment. See Exhibit 5, Default and Remedies Paragraph.

47.    LeasePoint demanded payment from the Defendants pursuant to the Second Agreement, Second Miller Guaranty, and Second Corporate Guaranty, but the Defendants have failed and refused to make payment.

48.    LeasePoint demanded return of the Second Equipment from O&R Center, but O&R Center failed and refused to return the Second Equipment to LeasePoint.

49.    LeasePoint has fully performed all of its obligations under the terms of the Second Agreement, Second Miller Guaranty. and Second Corporate Guaranty.

## COUNT I – BREACH OF CONTRACT
## AGAINST OSTEOPOROSIS & RHEUMATOLOGY
## CENTER OF TAMPA BAY, LLC

50.    LeasePoint repeats and realleges Paragraphs 1 through 49 as though fully set forth herein.

51.    O&R Center defaulted under the First Agreement by failing and refusing to make payments when due.

52.    Because of O&R Center's default under the First Agreement, O&R Center is indebted to LeasePoint in the amount of $156,883.95, plus accrued interest, attorneys' fees and costs.

53.     O&R Center defaulted under the Second Agreement by failing and refusing to make payments when due.

54.     Because of O&R Center's default under the Second Agreement, O&R Center is indebted to LeasePoint in the amount of $196,824.00, plus accrued interest, attorneys' fees and costs.

WHEREFORE, Plaintiff LEASEPOINT FUNDING GROUP, LLC respectfully requests that the Court enter judgment in its favor and against Defendant OSTEOPOROSIS & RHEUMATOLOGY CENTER OF TAMPA BAY, LLC in the amount of $353,707.95, plus accrued interest, attorneys' fees and costs, as well as all other such relief which this Court deems just.

## COUNT II – BREACH OF GUARANTY
## AGAINST JEFFREY MILLER, MD, PA

55.     LeasePoint repeats and realleges Paragraphs 1 through 49 as though fully set forth herein.

56.     Miller Medical Practice defaulted under the First Corporate Guaranty by failing or refusing to make payments when due.

57.     Because of Miller Medical Practice's default under the First Corporate Guaranty, Miller Medical Practice is indebted to LeasePoint in the amount of $156,883.95, plus accrued interest, plus attorneys' fees and costs.

58.     Miller Medical Practice defaulted under the Second Corporate Guaranty by failing or refusing to make payments when due.

59.     Because of Miller Medical Practice's default under the Second Corporate Guaranty, Miller Medical Practice is indebted to LeasePoint in the amount of $196,824.00, plus accrued interest,  attorneys' fees and costs.

9

WHEREFORE, Plaintiff LEASEPOINT FUNDING GROUP, LLC respectfully requests that the Court enter judgment in its favor and against Defendant JEFFREY MILLER, MD, PA in the amount of $353,707.95, plus accrued interest, attorneys' fees and costs, as well as all other such relief which this Court deems just.

### COUNT III – BREACH OF GUARANTY
### AGAINST JEFFREY MILLER

60.     LeasePoint repeats and realleges Paragraphs 1 through 49 as though fully set forth herein.

61.     Miller defaulted under the First Miller Guaranty by failing or refusing to make payments when due.

62.     Because of Miller's default under the First Miller Guaranty, Miller is indebted to LeasePoint in the amount of $156,883.95, plus accrued interest, plus attorneys' fees and costs.

63.     Miller defaulted under the Second Miller Guaranty by failing or refusing to make payments when due.

64.     Because of Miller's default under the Second Miller Guaranty, Miller is indebted to LeasePoint in the amount of $196,824.00, plus accrued interest, plus attorneys' fees and costs.

WHEREFORE, Plaintiff LEASEPOINT FUNDING GROUP, LLC respectfully requests that the Court enter judgment in its favor and against Defendant JEFFREY MILLER in the amount of $353,707.95, plus accrued interest, attorneys' fees and costs, as well as all other such relief which this Court deems just.

### COUNT IV – REPLEVIN
### AGAINST OSTEOPOROSIS & RHEUMATOLOGY
### CENTER OF TAMPA BAY, LLC UNDER FLA. STAT. § 78.01

65.     LeasePoint repeats and re-alleges Paragraphs 1 through 49 as though fully set forth herein.

10

66.     This claim is brought pursuant to Fla. Stat. § 78.01, made applicable to this proceeding pursuant to 28 U.S.C. § 1652, to recover the First Equipment and Second Equipment (collectively, the "Equipment") as described above.

67.     The Fair Market Value of the First Equipment is $43,000.00, depending on condition.

68.     The Fair Market Value of the Second Equipment is $50,000.00, depending on condition.

69.     Due to O&R Center's failure to make payments as required under the First Agreement and Second Agreement (collectively, the "Agreements"), LeasePoint is entitled to the possession of the Equipment.

70.     LeasePoint has been unable to secure the Equipment by peaceful means.

71.     O&R Center is wrongfully and unlawfully detaining the Equipment from LeasePoint.

72.     To LeasePoint's knowledge, information, and belief, O&R Center wrongfully detains the Equipment, because O&R Center does not want to make the required payments due under the Agreements.

73.     LeasePoint will suffer irreparable damages if the Equipment is not returned to LeasePoint.

74.     Upon information and belief, the Equipment is located at 3218 W. Azeele St, Tampa, Florida 33609.

75.     LeasePoint has first priority security interests in the Equipment.

76.     Pursuant to Fla. Stat. § 78.02, the Equipment has not been taken for any tax, assessment, or fine levied by virtue of any law of this State, against the property of LeasePoint,

nor seized under any lawful process against the goods and chattels of LeasePoint to such lawful process, nor held by virtue of any order for replevin against LeasePoint.

77.    LeasePoint's right to possession of the Equipment is superior to the rights of O&R Center.

WHEREFORE, Plaintiff LEASEPOINT FUNDING GROUP, LLC respectfully demands a final judgment of possession for the Equipment and damages against Defendant OSTEOPOROSIS & RHEUMATOLOGY CENTER OF TAMPA BAY, LLC for the value of any Equipment not so returned, plus accrued interest, attorneys' fees and costs, as well as all other and further relief which this Court deems just.

Dated this  31st  day of August, 2020.

> **LUKS, SANTANIELLO,**
> **PETRILLO & COHEN**
> *Attorneys for Plaintiff*
> 110 S.E. 6th Street, 20th Floor
> Fort Lauderdale, FL 33301
> Telephone: 954/766-9900
> Facsimile:  954/766-9940
>
> By:    */s/ Matthew G. Krause*
> **MATTHEW G. KRAUSE, ESQ.**
> Florida Bar No. 844225
> E-Mail: MKrause@ls-law.com